11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Leon=s Fine Foods of Texas, Inc.; Leon=s 

Fine Foods, Inc.; and
Leon=s Fine
Foods, 

Inc.
d/b/a Leon=s Texas
Cuisine

 

 

Appellants

Vs.                   No. 11-03-00146-CV -- Appeal from Dallas County

Merit
Investment Partners, L.P.

Appellee

 

This is an appeal by Leon=s
Fine Foods of Texas, Inc. et al (Leon=s)
from a post-answer default judgment 
entered in favor of Merit Investment Partners, L.P. (Merit).  There was an earlier appeal in this case
after a jury trial.   Leon=s Fine Foods of Texas, Inc. v. Merit
Investment Partners, Ltd., No. 05-97-00543-CV, 2000 WL 1048491 (Tex.App. - Dallas 2000, pet=n
den=d) (not designated for publication).  The Dallas Court of Appeals reversed the
trial court=s
directed verdict for Merit on two of Leon=s
causes of action and remanded the case for a new trial.  This case demonstrates what may happen to a
client when its attorney suffers from severe depression.   

After the remand, Leon=s
former attorney failed to file a response to Merit=s
request for disclosure, failed to answer Merit=s
interrogatories, and failed to produce Leon=s
witnesses for deposition.  Merit moved to
strike Leon=s pleadings,
to exclude Leon=s
evidence, and to have a $15,000.00 sanction imposed.  The hearing on the motion was held on
February 7, 2003.  The trial court
granted Merit=s motion
and imposed death penalty sanctions. 
Leon=s former
attorney did not attend the sanctions hearing, and Leon=s
did not know about the sanctions hearing.








Prior to the sanctions hearing, Merit=s attorneys on January 22, 2003, sent a
request for admissions to Leon=s
former attorney.  Leon=s response was due on February 21,
2003, the day that another district court entered a default judgment declaring
Leon=s
attorney disbarred.  Apparently unaware
that the attorney had been disbarred, the trial court below called the case for
trial on February 24, 2003.  Upon
learning that Leon=s
attorney had been admitted to a hospital emergency room for chest pains, the
trial court stated that it would recess the case until it heard from the
attorney.  On February 27, 2003, the
court heard evidence by Merit, deemed admitted Merit=s
requests for admissions, and entered a default judgment in favor of Merit.  Leon=s
had been aware of the February 24 trial date, but Leon=s
attorney had falsely advised the president of Leon=s
that the trial court had said it would reschedule the trial date.  Leon=s
was unaware of the default judgment hearing on February 27.  The trial court entered a corrected final
judgment on March 13, 2003.  Again, Leon=s was unaware of that hearing.  

In early April 2003, Leon=s
president learned of the default judgment. 
On April 11, Leon=s
new attorneys timely filed a motion for new trial.  Despite the fact that Leon=s had no part in the discovery abuse by
its former attorney and had no knowledge of the sanctions hearing or the
February 27 and March 13 hearings, the trial court denied Leon=s motion for new trial.  We reverse and remand.

                                                               Background
Facts

This case began in 1993.  Leon=s
sued its former landlord, Merit, alleging fraud, breach of their lease
agreement, breach of the covenant of quiet enjoyment, and violation of the
Texas Deceptive Trade Practices Act (DTPA). 
TEX. BUS. & COM. CODE ANN. '
17.41 et seq. (Vernon 2002 & Supp. 2004 - 2005).  Merit counterclaimed, alleging that Leon=s had breached the lease.  At the conclusion of the evidence in the
first trial before a jury, the trial court granted Merit=s
motion for directed verdict on each of Leon=s
causes of action and entered sanctions against Leon=s
because it found that some of Leon=s
pleadings were Agroundless
and brought in bad faith.@  The trial court=s
judgment also sustained Merit=s
counterclaim.[1]


The Dallas Court of Appeals affirmed in part and
reversed and remanded in part.  Leon=s Fine Foods of Texas, Inc. v. Merit
Investment Partners, Ltd., supra. 
The court concluded that there was direct evidence sufficient to raise a
fact issue on each of the elements of Leon=s
fraud claim and on Leon=s
claim that Merit had breached the contract. 
The court also reversed the trial court=s
sanction order and rendered judgment that the sanction order was unenforceable
against Leon=s.  The court of appeals issued its mandate on
October 24, 2001.








Steven Edward Rogers, Leon=s
former attorney, began having mental problems in 2001.  In October 2001, other clients began filing
grievances against Rogers with the State Bar. 
Rogers was failing to attend hearings, failing to keep clients informed,
misrepresenting matters to clients, allow-ing default
judgments to be entered, and allowing his clients=
cases to be dismissed.  On July 11, 2002,
the Evidentiary Panel of the State Bar=s
Grievance Committee found Rogers guilty of professional misconduct and placed
him on probation for 12 months.  One of
the conditions for probation was that Rogers obtain Aa
complete psychiatric/psychological evaluation by a psychiatrist/psychologist@ and submit the results to the State
Bar by October 1, 2002.  Rogers failed to
comply with that condition.

On October 21, 2002, the Chief Disciplinary Counsel
for the State Bar filed a petition with the Collin County District Court for
immediate interim suspension of Rogers. 
The petition recited that on or about September 20, 2002, the State Bar
District 1A Grievance Committee had found that Rogers posed a substantial
threat of immediate and irreparable harm to clients.  Despite the urgent nature of the State Bar=s petition, the district court did not
hold a hearing for months.  These
proceedings ultimately ended with a default judgment dated February 21, 2003,
disbarring Rogers.

At some point, Merit=s
attorneys began monitoring the State Bar website.  On September 17,  2002, Merit filed a Motion to Plaintiff Leon=s To Show Authority, alleging that
Rogers was not eligible to practice law in Texas.  The pleading requested that Rogers and Bob
Clements, Leon=s
president, be cited to appear before the trial court; however, the certificate
of service shows that only Rogers was served with a copy of the pleading.  No hearing was held on Merit=s motion.

On November 1, 2002, Merit=s
attorneys noticed the oral deposition of Rogers for November 8, 2002.  The subpoena duces
tecum required Rogers to produce all
correspondence with the State Bar=s
Chief Disciplinary Counsel and any grievance committee since 1990 and to
produce all written documents relating to times when Rogers was not authorized
to practice law in Texas or was not authorized to represent that he was board
certified.  Rogers did not respond, and
he failed to appear for his deposition on the rescheduled date of November 11.








On January 22, 2003, Rogers filed with the trial
court below a letter written by Dr. Mitchell Dunn, a psychiatrist.  Dr. Dunn=s
letter was addressed to the district judge in Collin County where the State Bar
was seeking Rogers=s
disbarment.  Dr. Dunn had first seen
Rogers on March 1, 2002, and had diagnosed Rogers with Major Depressive
Disorder, Severe.  Dr. Dunn had placed
Rogers on medication, and Rogers had attended weekly psychotherapy
sessions.  Dr. Dunn stated that, in his
opinion, Rogers had responded well to the treatment and that he thought that
Rogers would continue to do well.

Merit=s
attorneys were aware that Rogers had not improved despite Dr. Dunn=s opinion.  At the sanctions hearing on February 7, 2003,
which Rogers failed to attend and Leon=s
did not know about, Merit advised the trial court and the trial court found
that Leon=s had
failed to file any written response to Merit=s
First Supplemental Interrogatories which were first served on October 16, 2002;
that Merit had served notices on Leon=s
to take the oral depositions of Leon=s
witnesses and Leon=s
attorney had failed to produce the noticed witnesses on November 11, 2002, and
November 25, 2002; that Leon=s
had failed to comply with a TEX.R.CIV.P. 11 discovery agreement dictated to the
court reporter at a pretrial conference held on December 4, 2002, which
required Leon=s to
answer Merit=s Request
for Disclosure and Merit=s
First Supplemental Interrogatories and required Leon=s
to produce its witnesses for deposition; and that Leon=s
had been ordered to file an amended pleading and had failed to so.  

Merit=s
attorneys served Rogers on January 22, 2003, with Merit=s
First Request for Admissions.  Leon=s responses to these requests for
admissions were due on February 21, 2003 (the day that the district court in
Collin County declared Rogers disbarred). 
Rogers, of course, did not respond; and Leon=s
did not know about Merit=s
First Request for Admissions.  Merit=s First Request for Admissions was an
obvious attempt to have Leon=s,
through deemed admissions, admit that it had no causes of action.  Typical of the requests were that Leon=s admit the following:

REQUEST NO. 1: Defendant Merit did not act to
defraud Plaintiff Leon=s
of its existing property rights in the parties=
lease agreement.

 

REQUEST NO. 2: Defendant Merit did not make any
material misstatements of fact to Plaintiff Leon=s
regarding the parties=
lease agreement.

 

REQUEST NO. 3: Defendant Merit did not make any
false statements to Plaintiff Leon=s
regarding the parties=
lease agreement.

 

REQUEST NO. 4: Defendant Merit made no fraudulent
misrepresentations to Plaintiff Leon=s
regarding the parties=
lease agreement.

 








REQUEST NO. 5: Defendant Merit did not breach any provision of
the parties= lease
agreement during the time Plaintiff Leon=s
occupied the lease premise.

 

Yet, the court of appeals had
held that there were fact questions related to these issues raised by the
evidence in the first trial. Leon=s
Fine Foods of Texas, Inc. v. Merit Investment Partners, Ltd., supra.  From the requests, it is obvious that Merit
anticipated that Rogers would not respond to them on behalf of Leon=s. 
On remand, Leon=s
will have an opportunity to file a motion to withdraw the admissions.  The current state of the record demonstrates
that Leon=s has
shown good cause for their withdrawal.

                  The
Trial Court Erred in Imposing Death Penalty Sanctions

We review the imposition of sanctions by a trial
court for an abuse of discretion. Chrysler Corporation v. Blackmon, 841
S.W.2d 844, 853 (Tex.1992)(original proceeding).

Rogers failed to attend the February 7, 2003,
sanctions hearing, and Leon=s
did not know about the hearing.  Yet, that
hearing would have been an opportune time for the trial court to acquaint Leon=s with Rogers=s
failings and mental problems.  Requiring
Leon=s to
appear would also have enabled the trial court to follow the requirements of TransAmerican Natural Gas Corporation v. Powell,
811 S.W.2d 913 (Tex.1991)(original proceeding).

TransAmerican
Natural Gas Corporation v. Powell, supra at 917, held that an
imposition of sanctions must be measured by two standards: (1) a direct
relationship must exist between the offensive conduct and the sanction imposed
and (2) the Apunishment
should fit the crime.@  The first standard requires a trial court to
determine whether the offensive conduct was attributable to counsel only, or to
the party only, or to both.  The second
standard requires a trial court to consider the availability of less stringent
sanctions and whether such lesser sanctions would fully promote compliance.








Although Merit could have filed another motion for
Leon=s to show
Rogers=s authority,
Leon=s was not
cited to appear at the sanctions hearing. And Rogers did not tell Leon=s about the sanctions hearing.  At the outset of the hearing, Merit=s attorney told the court that AMr. Rogers=[s]
phone has been disconnected, and [Merit=s
attorney had] since December been personally delivering mail to Mr. Rogers=[s] mailbox in McKinney.@ 
Merit=s
attorneys introduced no evidence that Leon=s
was at fault for Rogers=s
numerous failings, and the trial court made no effort to determine whether
Rogers=s
offensive conduct was attributable to Leon=s
actions.  

At Leon=s
motion for new trial, Merit argued (and argues here) that Leon=s president was made aware of the
discovery abuses at his deposition in September 2002.  There was a heated exchange between Rogers
and Merit=s
attorney at Clements=s
deposition.  At one point, the following
was said:

[MERIT=S
ATTORNEY]:  How about the sanctions,
Steve? Let=s talk
about sanctions.  You=ve got 14
against you now, public reprimands by the Bar?

 

MR. ROGERS: You know that=s
grievable what you just said?

 

As the argument between the two attorneys
continued, Clements finally said that he had other things to do if they were
not going to take his deposition.  Merit=s attorney then asked Clements if he
was aware that Leon=s had
only two remaining causes of action left in this lawsuit, and Clements
responded:  AThat=s a legal question, and Mr. Rogers
would have to.@  At that point, Rogers inter-rupted claiming that Merit=s
question was an invasion of attorney-client privilege.  Merit=s
attorney then questioned Clements about a Adeath
penalty@:

Q.  Are you
aware that next Friday, both parties are going to be submitting written
affidavits on our motion to exclude all fact witnesses, expert testimony, and
damage testimony because there was a failure by your attorney to respond to a
request for disclosure that Merit had sent him?

 

A.  I am
sure that=s
something he handled.

 

Q. 
Okay.  Are you aware that if the
Judge rules in our favor, it could be the death penalty for you, and this case
is all over with?

 

A.  There is
no death penalty to me in this case.

 

Q.  I am
sorry.

 

A.  There is
no death penalty to me in this case.

 

Q.  I don=t understand what that means.

 

A.  Well, it=s a stupid question, so it=s a stupid answer.  I don=t
know what you mean by death penalty.








Q.  Okay.  That your lawsuit is dismissed.

 

A.  That=s the decision of the Judge.

 

Even if the foregoing portion of Clements=s deposition had been introduced at the
sanctions hearing, it was not a sufficient basis for imposing death penalty
sanctions on Leon=s.  The Texas Supreme Court has said that Adeath penalty sanctions should not be
used to deny a trial on the merits@
unless the guilty party=s
conduct is so bad that it Ajustifies
a presumption that its claims or defenses lack merit.@
Hamill v. Level, 917 S.W.2d 15
(Tex.1996); Chrysler Corporation v. Blackmon, supra at 851; TransAmerican Natural Gas Corporation v. Powell,
supra at 918.  The court of appeals
in Leon=s Fine
Foods of Texas, Inc. v. Merit Investment Partners, Ltd., supra,
determined after reviewing the trial record that there were fact questions on
Leon=s fraud
and breach of contract claims.  That
holding rebutted any presumption that Leon=s
claims lacked merit.  Moreover, there was
no evidence that Leon=s
engaged in Abad
conduct.@

The exchange at Clements=s
deposition was not sufficient to blame Leon=s
for Rogers=s
conduct.  It is arguable that the brief
exchange was not even sufficient notice to Clements to make further
inquiries.  Unfortunately, many attorneys
engage in aggressive behavior and hyperbole before clients.  To make any meaningful inquiries, Leon=s would have had to employ another
attorney to check on Rogers.  Clements
testified at Leon=s motion
for new trial hearing that he did not under-stand the term Adeath penalty@
or the legal procedures referred to by Merit=s
attorney.  Clements later asked Rogers
about Merit=s
questions to him, and Rogers told Clements that the hearing referred to by
Merit was not going to take place. 
Despite Merit=s
attorney=s
statement that the trial judge would rule the Anext
Friday,@ nothing
happened, just as Rogers said.[2]  Rogers had been Leon=s
attorney for 12 years, and Clements had no reason to doubt Rogers=s statements to him.  Clements said that he had Atrusted [Rogers] like a brother.@ 








In view of TransAmerican=s requirement that the trial court
determine whether the offensive conduct was attributable to counsel or the
client, Merit=s
attorneys could have requested that the trial court cite Leon=s to have a representative at the
sanctions hearing.  The trial court, of
course, could have required Leon=s
attendance on its own after reviewing Merit=s
reasons for sanctions.  There is no
evidence of any offensive conduct by Leon=s.  The trial court also should have considered
lesser sanctions.  The trial court abused
its discretion.  Wetherholt
v. Mercado Mexico Cafe, 844 S.W.2d 806 (Tex.App.
- Eastland 1992, no writ).

We sustain Leon=s
second issue that the trial court erred in imposing Adeath
penalty@
sanctions and reverse the trial court=s
imposition of sanctions against Leon=s.  Our holding that Leon=s
should have been cited to appear at the sanctions hearing is limited to the
facts of this case. We need not reach Leon=s
third issue, that a trial court must require actual notice to a client in every
case before death penalty sanctions are imposed. 

                                                            The
Default Judgment

Craddock v. Sunshine Bus Lines, 133 S.W.2d
124, 126 (Tex.1939), held that a trial court is required to set aside a default
judgment and order a new trial where (1) the failure of the party to appear was
not intentional or the result of conscious indifference on its part but was due
to a mistake or an accident; (2) the motion for new trial sets forth a
meritorious claim or defense; and (3) granting the motion will not occasion
delay or otherwise work an injury to the other party.  Cliff v. Huggins, 724 S.W.2d 778, 779
(Tex.1987), held that the Craddock requirements apply to a post-answer
default judgment.  The court in Lopez
v. Lopez, 757 S.W.2d 721, 722-23 (Tex.1988), held that, if the party had no
actual or constructive notice of the default judgment trial, lack of notice
satisfies the first Craddock requirement and that the party does not
have to satisfy the other two requirements.

Merit argues that Leon=s
was required to show that Leon=s
failure to appear on February 24 was not because of the Aconscious
indifference@ of both
the attorney and the client.  Leon=s made that showing.  We agree that, when a defaulting party has an
attorney, the party must demonstrate that the agent attorney did not act with
conscious indifference in failing to appear at a hearing.  Holt Atherton Industries, Inc. v. Heine, 835 S.W.2d 80, 83 (Tex.1992).  However, Rogers automatically ceased being
Leon=s
attorney on February 21, 2003, when he was declared disbarred.  Thus, the record shows that Rogers did not
act with Aconscious
indifference@ in
failing to appear on February 27; he couldn=t appear as Leon=s
attorney.  








Although Leon=s
knew about the February 24, 2003, trial date, Clements testified at Leon=s motion for new trial that Rogers
falsely told him that the trial court had cancelled the February 24 date and
would reschedule the trial.  It is
unrealistic to expect a client to verify its counsel=s
statement that a trial date had been cancelled. 
Rogers=s false
statement misled Leon=s.[3]  Leon=s
has satisfied the first prong of Craddock as to the February 24 date.  See Lowe v. Lowe, 971 S.W.2d
720, 724 (Tex.App. - Houston [14th Dist.] 1998, pet=n den=d).  Leon=s
did not know about the rescheduled date of February 27; hence, Leon=s did not act with Aconscious indifference@ in failing to appear on February
27.  Any notice to Rogers of the February
27 date cannot be imputed to his former client, Leon=s.  Langdale
v. Villamil, 813 S.W.2d 187, 190 (Tex.App. - Houston [14th Dist.] 1991, no writ).  And there was no notice to Rogers of the new
February 27 date until after his disbarment date of February 21.

Citing Plains Growers,
Inc. v. Jordan, 519 S.W.2d 633, 636 (Tex.1974)(original proceeding), Merit
argues that Leon=s had
notice of the February 24 scheduled setting and that Leon=s was required to keep itself informed
of the time that the scheduled case might be heard during the following
week.  This ignores Rogers=s false statement to Leon=s. Also, Merit=s
reliance on Plains Growers is mis-placed. 

The supreme court in  Plains Growers held that the default judgment
in that case was not void and denied the request for a writ of mandamus to set
the judgment aside.  But the supreme
court indicated that the trial judge had abused his discretion in entering the
default judgment with no notice to either the attorney or the client:

Although the setting and trial without notice may have
constituted an abuse of discretion under the circumstances, a question we do
not attempt to decide here, this does not render the judgment void.  The trial court had jurisdiction of the
subject matter and the judgment is not void even though it may have been
erroneous. (Emphasis added)

 

Plains Growers v. Jordan,Inc.,
supra at 636.  The motion for new
trial in Plains Growers was filed late; therefore, the relator filed a mandamus action to set aside the default
judgment as void.  Leon=s timely filed its motion for new trial
and this appeal.  We hold that the trial
court below abused its discretion in entering the default judgment against Leon=s.








A party who has made an appearance in a cause is
entitled to notice of a trial setting as a matter of due process under the
Fourteenth Amendment of the Federal Constitution.  LBL Oil Company  v. International Power Services, Inc., 777
S.W.2d 390, 390-91 (Tex.1989); Lopez v. Lopez, supra .  Because Leon=s
had no notice of the post-answer default-judgment proceeding, actual or
constructive, Leon=s was
deprived of due process.  Lopez v.
Lopez, supra.  A party who has been
denied due process through lack of notice of a trial setting satisfies the
first requirement of Craddock and does not have to meet the remaining
requirements of Craddock to be entitled to a new trial.  Lopez v. Lopez, supra; Smith v.
Holmes, 53 S.W.3d 815, 817 (Tex.App. - Austin
2001, no pet=n); Green
v. McAdams, 857 S.W.2d 816, 819 (Tex.App. -
Houston [1st Dist.] 1993, no writ).  Leon=s is entitled to have the default
judgment set aside and to have a new trial. 
LBL Oil Company v. International Power Services, Inc., supra at
390-91; Lopez v. Lopez, supra.

Leon=s
first issue is sustained.  The trial
court erred in refusing to grant Leon=s
motion for new trial.  

Because of our disposition of issues one and two,
we need not address issues three, four, five, 
six, seven, and eight. 
TEX.R.APP.P. 47.1.

                                                               This
Court=s Ruling

We reverse the trial court=s
judgment, including its partial summary judgment on August 21, 2002, and
sanctions order on February 7, 2003, and remand for a new trial in accordance
with this opinion.

 

TERRY McCALL

JUSTICE

 

February 17, 2005

Panel
consists of:  Arnot,
C.J., and

Wright,
J., and McCall, J.











[1]The trial court found that the lease terminated on
December 30, 1993; that Leon=s failed to vacate the premises; and that Leon=s owed Merit the fair market rental value of $9,695.00
per month for the period from January 1, 1994, through January 31, 1995.  Leon=s
tendered $99,206.16 into the registry of the court; later, that amount was paid
to Merit. 





[2]A sanctions hearing was ultimately held 5 months later
on February 7, 2003.





[3]Merit=s attorney acknowledged that Rogers had lied to him
more than once.